WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Susanne Beveridge,<br><br>      Plaintiff,<br><br>v.<br><br>Benefit Recovery, Inc., et al.,<br><br>      Defendants. | NO. CIV-04-2729-PHX-SMM<br><br>**MEMORANDUM OF DECISION AND ORDER** |

  Pending before the Court is Defendant Benefit Recovery, Inc.'s ("BRI") Motion for Summary Judgment and Plaintiff Susanne Beveridge's Cross-Motion for Summary Judgment. (Dkts. 17, 18). The parties have stipulated to the facts in the Joint Proposed Case Management Plan, and have stated that there are no factual issues in dispute. (Dkt. 14). Both parties have filed responses and replies to the motion and cross-motion for summary judgment. (Dkts. 20, 21). In addition, Defendant has also filed two notices of supplemental authority. (Dkts. 22, 26). After reviewing the parties' filings, the Court issues the following Memorandum of Decision and Order. Although Plaintiff has requested oral argument, the Court finds it would not be helpful, and therefore issues this Order without it.

  Plaintiff Susanne Beveridge was injured in a motor vehicle accident on September

15, 2002.[1] (Dkt. 14, Stipulation of Facts, ¶ ii). Plaintiff was a participant under the terms of the Southwest Airlines Company Welfare Benefit Plan (the "Plan"), which is a self-funded plan covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et. seq. (Id. at ¶¶ i, v). As a result of injuries received from the accident, the Plan paid $135,597.62 in medical benefits on behalf of Plaintiff. (Id. at ¶ iii). Plaintiff later settled with the third parties responsible for her injuries. (Id. at ¶ iv). The Plan contains an "Acts of Third Parties" provision that requires a Plan participant to reimburse the Plan, to the extent of benefits paid, when he or she makes a recovery from other parties. (Id. at ¶ vi). BRI, a subrogation services provider for the Plan, notified Plaintiff of the Plan's subrogation interest and its intent to pursue reimbursement on behalf of the Plan in a "Notice of Lien" letter to Plaintiff's attorney dated November 18, 2002. (Id. at ¶ viii). Additionally, BRI requested that Plaintiff's attorney hold recovered funds until the Plan's lien is resolved. (Id.). On December 1, 2004, Plaintiff filed her complaint for a "declaratory judgment concerning Defendant's alleged 'lien' for medical expenses paid to Plaintiff pursuant to an ERISA-qualified plan." (Dkt. 1).

The Court's exercise of jurisdiction over this case is proper under 28 U.S.C. § 1331, because the matter in controversy arises under the laws of the United States. Venue is proper pursuant to 28 U.S.C. § 1391(b).

**STANDARD OF REVIEW**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the pleadings, depositions, affidavits, answers to interrogatories, and admissions on file show that there is no genuine dispute regarding the material facts of the case and the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P.

---

[1] Plaintiff states the date of the accident as May 10, 2004 and May 10, 2002 in her response and statement of facts in support of her response, respectively. (Dkts. 18, 19). Plaintiff has already stipulated to the date of the accident as September 15, 2002 in the Joint Proposed Case Management Plan. (Dkt. 14).

1  56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  The court must evaluate
2  a party's motion for summary judgment construing the alleged facts with all reasonable
3  inferences favoring the nonmoving party.  See Baldwin v. Trailer Inns, Inc., 266 F.3d 1104,
4  1117 (9th Cir. 2001).

5  When the parties file countermotions for summary judgment, as in this case, the court
6  must consider each motion separately on its own merits, which requires review of the
7  evidence submitted in support of each cross-motion.  Fair Hous. Council v. Riverside Two,
8  249 F.3d 1132, 1136 (9th Cir. 2001).  "It is well-settled in this circuit and others that the
9  filing of cross-motions for summary judgment, both parties asserting that there are no
10 uncontested issues of material fact, does not vitiate the court's responsibility to determine
11 whether disputed issues of material fact are present."  United States v. Fred A. Arnold, Inc.,
12 573 F.2d 605, 606 (9th Cir. 1978).  Thus, even when the parties have stipulated to the facts,
13 judgment as a matter of law is only appropriate when there is no genuine issue of material
14 fact.

15 **DISCUSSION**

16 **I.  Propriety of Suit under ERISA**

17 ERISA provides for a federal cause of action for civil claims aimed at enforcing the
18 provisions of an ERISA plan.  See 29 U.S.C. § 1132(e)(1); Reynolds Metal Co. v. Ellis, 202
19 F.3d 1246, 1247 (9th Cir. 2000).  In order to bring a claim under ERISA, a plaintiff must
20 fall within one of nine specific civil enforcement provisions, each of which details who may
21 bring suit and what remedies are available.  See 29 U.S.C. § 1132(a)(1)-(9).  A *participant*
22 is allowed to bring suit under several provisions, including "to recover benefits due to him
23 under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his
24 rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  In
25 addition, a participant may also seek injunctive relief under § 1132(a)(3).  On the other
26 hand, a *fiduciary* (i.e., the Plan) can only bring suit under § 1132(a)(3) to enjoin any act or

practice which violates any provision of this subchapter or the terms of the plan, or to obtain "other appropriate equitable relief."  29 U.S.C. § 1132(a)(3)(A)-(B).

Courts have interpreted what constitutes "other appropriate equitable relief" available to a plan administrator under § 1132(a)(3)(B).  A plan cannot enforce a subrogation clause if in essence the relief sought is legal, and not equitable within the meaning of § 1132(a)(3). See Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002) ("Great-West"); FMC Medical Plan v. Owens, 122 F.3d 1258 (9th Cir. 1997).  With regards to the participant, though, both the Fourth and Fifth Circuits have found that a participant can bring a suit to declare his or her rights with regards to subrogation.  See Singh v. Prudential Health Care Plan, Inc., 335 F.3d 278, 291 (4th Cir. 2003) (finding that participant's claim to recover the portion of her benefit diminished by her payment to plan under the subrogation term is no different from a claim seeking recovery of a plan benefit denied in the first place); Arana v. Ochsner Health Plan, 338 F.3d 433, 437-38 (5th Cir. 2003) (finding that participant's claim for a declaratory judgment requiring Plan to release its notice of lien and to withdraw its subrogation claims was either a claim "to recover benefits due" or "to enforce his rights").

Plaintiff seemingly argues that Defendant is not entitled to relief because the Plan is limited to equitable relief, which leads this Court to first address the propriety of this suit under ERISA. (Dkt. 18, p. 6).  Plaintiff argues that Defendant's use of a lien to enforce a contractual obligation is not an equitable action, but an action at law for compensatory damages that is prohibited under ERISA.  Plaintiff also argues "it is completely irrelevant that Plaintiff brought this matter to the Court" (Dkt. 21, p. 1-2).  However, *who* can bring *what* remedy is an underlying issue, and Plaintiff appears to be blending the issue of the propriety of the suit under ERISA with the separate issue of whether a lien is enforceable under ERISA.  Plaintiff brought this action to declare the rights and obligations of the parties under the subrogation/reimbursement provision, which is an action that falls within

a section of ERISA not foreclosed by law, § 1132(a)(1)(B).  <u>See</u> <u>Singh</u>, 335 F.3d at 291; <u>Arana</u>, 338 F.3d at 437-38.  Because Plaintiff is the party who brought this action to enforce her rights, this action is properly before the Court.  Defendant Plan did not file this claim under § 1132(a)(3)(B) and is not seeking to enforce its contractual right of reimbursement in violation of ERISA'S enforcement scheme.  Accordingly, this Court may properly declare the rights and obligations of the parties under the subrogation/reimbursement provision.

## II. **Enforceability of Lien under ERISA**

Courts have struggled over how to interpret "other appropriate equitable relief," seemingly narrowing the definition of "equitable" at times, and more recently broadening their interpretation.  In determining whether an action for equitable relief is properly brought under ERISA, the courts look to the "substance of the remedy sought rather than the label placed on that remedy."  <u>Mertens v. Hewitt Assocs.</u>, 508 U.S. 248, 255 (1993).  The Supreme Court has construed the term "equitable relief" to refer only to "those categories of relief that were *typically* available in equity."  <u>Great-West</u>, 534 U.S. at 210 (quoting <u>Mertens</u>, 508 U.S. at 256) (emphasis in original).  With this meaning of "equitable relief" in mind, the Supreme Court held in <u>Great-West</u> that the plan could not compel the participant to pay restitution for benefits that it had paid.  <u>Id.</u> at 221.  Because the funds were not in the participant's possession, in essence the plan sought to impose personal liability upon the participant for a contractual obligation to pay money, which does not constitute "equitable relief" authorized by § 1132(a)(3).  <u>Id.</u>  However, the Court suggested that "a plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession."  <u>Id.</u> at 213.

The Ninth Circuit declined to follow that suggestion, instead finding that the existence of an escrow account did not affect the application of the ERISA statute, and the

-5-

plan administrator's action for reimbursement did not constitute equitable relief because the action remained one for money damages. See <u>Westaff (USA) Inc. v. Arce</u>, 298 F.3d 1164, 1167 (9th Cir. 2002). Earlier this year, though, the Ninth Circuit's decision in <u>Westaff</u> was abrogated by <u>Sereboff v. Mid Atlantic Medical Servs., Inc.</u>, 126 S.Ct. 1869 (2006). In <u>Sereboff</u>, the Supreme Court held that relief requested in the form of a constructive trust or lien is "equitable" because the "Acts of Third Parties" provision in the plan specifically identified a particular fund distinct from the participants' general assets to which the plan was entitled. <u>Id.</u> The Court found the plan's claim indistinguishable from an action to enforce an equitable lien established by an agreement. <u>See id.</u> In a footnote, though, <u>Sereboff</u> made clear that the Court did not address whether the relief sought is "appropriate" under principles like the "make-whole doctrine" as the Court only addressed whether the lien was "equitable." <u>Id.</u> at 1877, n. 2.

Here, Plaintiff alleges the lien is "inherently invalid, unenforceable, and unlawful" because Defendant substantively wants money damages, which is non-equitable relief strictly disallowed under ERISA. (Dkt. 1, p. 3). Before <u>Sereboff</u>, however, cases such as <u>Great-West</u> and <u>FMC Medical Plan</u> did not hold that the assertion of reimbursement claims violated any law or were otherwise invalid. Rather, they held that the remedies sought in those cases could not be pursued in federal court under ERISA because the remedies amounted to monetary damages, while ERISA provides only for equitable relief. Those cases did not specifically foreclose all possible remedies, as in <u>Great-West</u> where the Court went so far as to suggest potential remedies available to a plan, nor did they render the underlying debt void. In addition, Plaintiff argued the lien is invalid and unenforceable without the clarification of <u>Sereboff</u>, which the Supreme Court decided after the parties had submitted their cross-motions. <u>Sereboff</u>, of course, held that a lien can be considered equitable and enforceable by a plan under ERISA.

Although the facts here vary slightly from <u>Sereboff</u> because Plaintiff brought this

1 action, had Defendant brought this suit, the lien would be considered equitable and not
2 "inherently invalid, unenforceable, and unlawful."  The Court arrives at this conclusion
3 because the lien on the trust holding the funds collected from Plaintiff's settlement can be
4 considered "money or property identified as belonging in good conscience to the [Plan]" and
5 "clearly be traced to particular funds or property in the [Participant's] possession."  Great-
6 West, 534 U.S. at 213.  Under Sereboff, the term "equitable" has been broadened so that
7 Defendant's lien cannot be considered inherently unenforceable.

8      Although Plaintiff alleges the inherent invalidity of the lien, the Court notes that
9 Plaintiff does not address the separate issue of whether the subrogation clause or plan
10 language is "appropriate."  Plaintiff has not raised principles such as the "make whole
11 doctrine" or possible state statutes.  However, the Plan itself states that "[t]he Plan's right of
12 subrogation and repayment is not subject to the insured/injured party first being made
13 whole, that is, 'make whole' rule does not apply to the Plan."  As noted above, the Supreme
14 Court made no determination of what is "appropriate" under principles like the "make whole
15 doctrine."  Sereboff, 126 S.Ct. 1877, n. 2.  Even though Plaintiff alludes to being
16 "significantly uncompensated for her permanent injuries" (Compl. ¶¶ 10-12), the parties
17 have not stipulated to this fact, and the Court declines to consider an argument that has not
18 been asserted.  In short, the Plan has not attempted to enforce its terms in a manner that
19 violates ERISA, and Defendant Plan is entitled to relief.

20 **III. Attorney's Fees**

21      According to the Plan's provisions, the amount reimbursed to the Plan should be
22 reduced by attorney's fees: "[r]easonable prorata expenses such as attorney fees and court
23 costs, which were incurred in effecting the third party payment, may be deducted from a
24 repayment to the Plan." (Dkt. 14, Stipulation of Facts, ¶ vi).  Plaintiff alleges a one-third
25 contingent attorney's fee in obtaining the third party settlement so that "the maximum
26 amount to which BRI would be entitled would be $84,76.97 [$135,597.62 minus

-7-

1  ($45,199.21 in attorney's fees and $6,221.54 in costs)]." (Dkt. 21, p. 4).  Defendant has not
2  disputed the amount of attorney's fees and costs, and the Court finds no contested issues of
3  material fact.  Therefore, the subrogation amount Defendant is entitled to should be reduced
4  by Plaintiff's litigation costs in obtaining the third party settlement.  However, due to
5  Plaintiff's typographical error and incorrect math calculation, the Court finds the actual
6  amount Defendant would be entitled to is $84,176.87.

7  Accordingly,

8  **IT IS HEREBY ORDERED GRANTING** Defendant's Motion for Summary
9  Judgment (Dkt. 17) and **DENYING** Plaintiff's Cross-Motion for Summary Judgment (Dkt.
10 18), thereby terminating this case.  The Clerk of Court shall enter judgment accordingly.

11 **IT IS FURTHER ORDERED** awarding $84,176.87 to Defendant from the trust
12 holding the funds collected from Plaintiff's settlement, with the remainder to be returned to
13 Plaintiff for attorney's fees and costs in obtaining that settlement.

14 DATED this 21st day of July, 2006.

Stephen M. McNamee
United States District Judge